IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:11CV294-RJC-DSC

| | |
|---|---|
| COREY G. COSOM,  )<br>       Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>MICHAEL J. ASTRUE,  )<br>Commissioner of Social  )<br>Security Administration,  )<br>       Defendant._____)<br>  ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12), both filed November 7, 2011; and Defendant's "Motion for Summary Judgment" (document #17) and "Memorandum in Support ... (document #18), both filed February 21, 2012.  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

**I. PROCEDURAL HISTORY**

On October 24, 2007, Plaintiff filed an application for a period of disability and Social

---

[1] Pursuant to the Pretrial Scheduling Order entered on September 3, 2011, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #10. <u>See also</u> Local Civil Rule 7.1 (E) which clarifies that the briefing schedule provided under Rule 7.1 does not apply in Social Security appeals.

Security benefits, initially alleging that he was unable to work as of February 15, 2007 due to diabetes and high blood pressure. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing which was held on July 13, 2009.

. On September 22, 2009, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled through his date last insured of December 31, 2007 (Tr. 13-26).[2] The ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 15, 2007 through his date last insured. (Tr. 14 at Finding 2). The ALJ also found that Plaintiff suffered from diabetes mellitus type II, hypertension, chronic kidney disease, and obesity, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 356-357 at Findings 3 and 8). The ALJ then considered whether Plaintiff could return to his past relevant work. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light[3] work with a sit/stand option, occasional climbing, and occasional hazards (Tr. 15 at Finding 5). Based on Plaintiff's RFC, other vocational characteristics, and vocational expert testimony, the ALJ concluded that Plaintiff could not perform his past relevant work (Tr. 19 at Finding 6), but that he could perform other work that existed in significant numbers in the national economy (Tr. 19-21 at Findings 7-10). Accordingly,

---

[2] Plaintiff acquired sufficient quarters of coverage to remain insured for Disability Insurance Benefits ("DIB") only through December 31, 2007 (Tr. 102-103). In order to establish disability for DIB purposes, he had the burden of showing that he was disabled on or before that date. See 20 C.F.R. §§ 404.101, 404.130-404.131.

[3] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

the ALJ determined that Plaintiff was not disabled at any time through December 31, 2007 (Tr. 21 at Finding 11).

By notice dated April 21, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

The Plaintiff filed the present action on June 15, 2011. On appeal, Plaintiff assigns error to the hypothetical question the ALJ asked the Vocational Expert ("V.E.") concerning Plaintiff's need for a sit/stand option at work, the ALJ's evaluation of Plaintiff's obesity, and the ALJ's failure to re-contact Plaintiff's treating physicians and/or order a consultative medical examination. See Plaintiff's "Memorandum in Support ..." at 9-18 (document #12). The parties' cross Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401

(1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior his date last insured of December 31, 2007.[4] It is not enough for a claimant to show that he suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become

---

[4]Under the Social Security Act, 42 U.S.C. § 301 et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

Plaintiff first argues that the ALJ erroneously relied upon the V.E.'s response to an improper hypothetical question. The ALJ posed the following hypothetical:

> Assume I find on the basis of the credible record before me a full record here [sic], that that the claimant has demonstrated exertional impairments reflecting residual functional capacity for a full range of light work on a sustained work [sic], and assume further that he has demonstrated certain significant non-exertional impairments, principally relating to diabetes, high blood pressure and chronic kidney disease, which limits him to work requiring sit/stand option, occasional climbing – and that's both stairs ladders, and occasional hazards, taking into full account that these non-exertional restrictions and this claimant's age, education and prior relevant work experience, are there any jobs existing in the general area in which this claimant lives, and other regions of the country that he could do with these limitations?

(Tr. 46-47). The V.E. responded to the hypothetical by stating that Plaintiff could perform the light and unskilled jobs of storage facility rental clerk, information clerk, and cashier two, and that there are more than 30,000 of these jobs available in North Carolina.

Plaintiff alleges that the ALJ erred by failing to clarify the frequency that Plaintiff would need to alternate between sitting and standing. (document #12) at 12-15.

The Fourth Circuit has held that vocational expert testimony as to the existence of jobs constitutes substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question that includes an accurate RFC . See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) (stating, "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."); Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (indicating that vocational expert testimony as to the existence

5

of jobs constitutes substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC). Importantly, "the ALJ has some discretion to craft hypothetical questions," and "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006).

The ALJ's hypothetical question to the V.E. was consistent with Plaintiff's functional capacity and resulting limitations found in the RFC. The ALJ asked the V.E. to assume an individual with the same age, education, and work experience as Plaintiff, with the primary impairments of diabetes, high blood pressure, and chronic kidney disease, who was limited to light work with a sit/stand option, occasional climbing, and occasional hazards (Tr. 15 at Finding 5, 46).

Plaintiff argument that the ALJ's hypothetical question was deficient because Social Security Rulings ("SSR") 83-12 and 96-9p required him to specify the frequency with which the hypothetical individual needed to alternate between sitting and standing has no merit. See Vallejo v. Astrue, No. 3:10-CV-00445-GCM-DCK, 2011 WL 4595259, *7-11 (W.D.N.C. Aug. 4, 2011) (rejecting plaintiff's argument that remand was required and ALJ did not specify the frequency of the sit/stand option in the hypothetical question where plaintiff was limited to light work); see also Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002) (denying remand where ALJ did not clarify how often the claimant would need to alternate between sitting and standing).

SSR 83-12 addresses situations where a claimant's exertional limitations fall within a range of work, and sets forth when the ALJ may rely on the Medical-Vocational Guidelines and when testimony from a vocational expert is required. In this case, the ALJ concluded that vocational expert testimony <u>was</u> required to carry the Commissioner's burden at step five (Tr. 20), and thus the

6

ALJ complied with SSR 83-12. See SSR 83-12, 1983 WL 31253 at *4 (1983), Vallejo, 2011 WL 4595259 at *9.

SSR 96-9p applies only to cases where the ALJ must determine the claimant's capability to perform other work where his RFC allows for less than a full range of sedentary work. SSR 96-9p, 1996 WL 374185 at *7 (Jul. 2, 1996). Here, Plaintiff's RFC was for a range of light work (Tr. 15 at Finding 5), and thus SSR 96-9p does not apply. See Vallejo, 2011 WL 4595259 at *9-10. The Fourth Circuit has determined that a hypothetical restricting the claimant to light work with a sit/stand option adequately reflects the claimant's limitations. See Johnson, 434 F.3d at 659 (4th Cir. 2005). See also Hodge v. Barnhart, No. 02-35481, 2003 WL 22176639, at **2 (9th Cir. September 19, 2003) (same holding). For these reasons, Plaintiff's first assignment of error fails.

Plaintiff next argues that the ALJ did not adequately consider his obesity. Plaintiff contends that since the ALJ found his obesity was a severe impairment, he was required to discuss it in his RFC findings and failed to do so. Pursuant to SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002), an ALJ is required to consider obesity throughout the sequential evaluation process. Here, the ALJ considered Plaintiff's obesity and found it to be a severe impairment. The ALJ specifically noted Plaintiff's weight and weight management in his decision (Tr. 14, 15, 17), and limited his RFC to light work with occasional climbing, occasional hazards, and a sit/stand option (Tr. 15 at Finding 5). In formulating Plaintiff's RFC, the ALJ considered the combination of all of Plaintiff's impairments (Tr. 15-19). Plaintiff points to no evidence in the record demonstrating any functional limitations due to his obesity that were not addressed by the ALJ. He merely alleges that the ALJ failed to properly evaluate his obesity. SSR 02-1p states, in relevant part

> we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other

7

impairment. <u>We will evaluate each case based on the information in the case record</u>. SSR 02-1p, 2000 WL 628049, at *6 (emphasis added). There is simply no information in the case record that reflects any functional limitations due to Plaintiff's obesity or any other impairment beyond those found by the ALJ. While Plaintiff's physicians noted his weight, no medical source found that he had any work limitations due to his obesity beyond those noted by the ALJ. Plaintiff points to nothing in the record indicating any limitations stemming from his obesity. To the extent that the record supported restrictions due to his physical impairments including obesity, the ALJ properly restricted Plaintiff to light work with a sit/stand option, occasional climbing, and occasional hazards (Tr. 15 at Finding 5). The record does not support a remand to reconsider the severity and functional impact of Plaintiff's obesity.

Plaintiff finally argues that the ALJ should have re-contacted his treating physicians or ordered a consultative examination. Ultimately, the ALJ is responsible for deciding Plaintiff's RFC, i.e., "the most [one] can do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC finding is not a medical opinion, but an administrative determination reserved to the ALJ based upon a consideration of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . ., the final responsibility for deciding these issues is reserved to the Commissioner"). In evaluating Plaintiff's RFC, the ALJ was carrying out his responsibility to weigh the evidence and make factual findings. Substantial evidence supports his determination.

In making his RFC finding, the ALJ considered the objective medical evidence, treatment notes, opinion of the non-examining state agency physician, and Plaintiff's testimony. The objective evidence and treatment notes do not reveal any limitations beyond those found by the ALJ. As thoroughly discussed by the ALJ (Tr. 15-19), the objective medical evidence revealed that Plaintiff

was an obese man with a long history of poorly controlled diabetes mellitus type II, hypertension, and chronic kidney disease (Tr. 345). Plaintiff was treated at Eastland Family Practice prior to his alleged onset date, from August 31, 2005 through September 20, 2006 (Tr. 254-266). He was primarily treated for diabetes, right flank (kidney) pain, and hypertension (Tr. 255-266). Although Plaintiff was not seen there during the relevant time period, Plaintiff's diabetes was reported as well-controlled on Insulin and Metformin on September 20, 2006 (Tr. 255).

Plaintiff was also treated at First Foundation Clinic of the Carolinas from October 2006 through June 2009 (Tr. 227-235, 289-309). During the time period prior to his date last insured, all examinations there were essentially normal. There was one notation of sensory deficit as well as other reports involving congestion, upper respiratory complaints, and a rash (Tr. 227-235). There was one report of frequent urination in November 2007, but no further complaints during the relevant time period (Tr. 227).

Plaintiff was seen at Metrolina Nephrology in October 2006 (Tr. 343-348), and also from December 2008 through May 2009 (Tr. 267-286). In October 2006, Plaintiff was seen by a nephrologist in a consultative examination for abnormal renal function, poorly controlled diabetes, and albuminuria (Tr. 345). Upon physical examination, Plaintiff had clear lungs, regular heart, benign abdomen, 1+ pitting edema pretibially bilaterally, trace palpable dorsalis pedis and posterior tibial pulses, and diminished sensation to light touch in his feet (Tr. 345). Plaintiff was diagnosed with volume overload, likely diabetic nephropathy, poorly controlled diabetes with peripheral neuropathy, and hypertension (Tr. 346). He was advised to reduce his sodium and take Lasix for his volume overload (Tr. 346). Plaintiff was to return in three months (Tr. 346). He did not return until two years later (Tr. 277-278).

During the relevant time period Plaintiff also was seen in the emergency room for

pharyngitis, acute sinusitis, right toe injury, and tinea (Tr. 154-218). Plaintiff was also seen by Mecklenburg Eye Associates in November 2007 and had 20/20 vision in both eyes (Tr. 236-239). There is no medical evidence during the relevant time period that identifies any limitations beyond those found by the ALJ.

In addition to the medical evidence, the ALJ considered the opinion of the non-examining physician who reviewed the record (Tr. 19, 244-251). Contrary to Plaintiff's assertion, the ALJ did not reject this opinion that he could perform medium work. The ALJ declined to give it determinative weight due to additional evidence received at the hearing (Tr. 19, 244-251). The non-examining physician reviewed a significant amount of evidence during the relevant time period, and opined that Plaintiff could perform medium work (Tr. 244-251). Ultimately this opinion is supportive of the ALJ's overall findings. While the ALJ's RFC is more restrictive - light work, with a sit/stand option, occasional climbing, and occasional hazards - he considered additional evidence, including Plaintiff's testimony. It was within the ALJ's authority to consider the opinion of the non-examining physician, see 20 C.F.R. § 404.1527(f) and SSR 96-6p, 1996 WL 376180, and also to give Plaintiff the benefit of the doubt by finding greater limitations.

The ALJ also considered Plaintiff's subjective complaints in formulating the RFC (Tr. 19-24). The Fourth Circuit has adopted a two-step process is used to analyze subjective allegations. Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006); Craig v. Chater, 76 F.3d 585, 594-595 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918, 919-920 (4th Cir. 1994); see 20 C.F.R. § 404.1529(b) and (c). First, the ALJ must determine whether a medical impairment is present which can reasonably be expected to cause the symptoms alleged. Craig, 76 F.3d at 594-595; Mickles, 29 F.3d at 919-920; *see* 20 C.F.R. § 404.1529(b). If this question is answered affirmatively, the ALJ must then evaluate the intensity and persistence of the symptoms. Craig, 76 F.3d at 594-595; Mickles,

29 F.3d at 919-920; see 20 C.F.R. § 404.1529(c). Factors relevant to this determination include the claimant's daily activities; the claimant's statements regarding the location, duration, and frequency of the symptoms; precipitating and aggravating factors; and the effectiveness of medicine and other treatment. Craig, 76 F.3d at 594-595; Mickles, 29 F.3d at 919-920; see 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). Although a claimant's allegations cannot be disregarded at step two because of a lack of objective evidence, an ALJ may still take the objective medical evidence into consideration and reject those allegations. Hines, 453 F.3d at 565 n.3; 20 C.F.R. § 404.1529(c)(2). The ALJ undertook the proper analysis in rejecting Plaintiff's allegations of completely disabling symptoms.

The ALJ properly found that Plaintiff satisfied the first prong of the analysis. However, he determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. Plaintiff's statements were inconsistent with the RFC determination at any time prior to his date last insured (Tr. 16). In evaluating the intensity, persistence, and limiting effects of pain, the ALJ properly considered Plaintiff's statements, his treatment, the objective medical evidence, and the opinion of the non-examining state agency physician (Tr. 16-19).

The objective evidence, discussed above, does not support such disabling limitations as Plaintiff contends. The physical examination findings during the relevant time period do not support such significant restrictions (Tr. 227-225) and no physician ever opined on functional limitations greater than those found by the ALJ. Further, noncompliance with prescribed and recommended treatment (Tr. 230, 260, 262, 266, 277-278, 289, 295-304) and failure to attend follow-up appointments (Tr. 277-278, 345-346) are not consistent with disabling symptoms. Mickles, 29 F.3d at 930 ("an unexplained inconsistency between the claimant's characterization of the severity of her

condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.").

Plaintiff argues that the ALJ erred in failing to re-contact his physicians. While Plaintiff cites the various instances under the regulations when it is necessary to re-contact a treating source, all of those are premised on the ALJ finding that the evidence is insufficient to assess disability. 20 C.F.R. §§ 404.1512(e)(1), 404.1527(c)(3). There is no requirement in the regulations that the ALJ re-contact a treating source when there is no opinion evidence on disability from that source. Where the record contains sufficient evidence for the ALJ to render his decision, he is not required to re-contact a treating or other medical source. 20 C.F.R. § 404.1512(e); see Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (holding that there is no need to re-contact a physician where the ALJ can determine from the record whether the applicant is disabled).

Plaintiff also argues that the ALJ erred because he did not arrange for a consultative examination. The regulations provide that a consultative examination is required when the information sought "is not readily available from the records of [the claimant's] medical treatment source, or [the Commissioner is] unable to seek clarification from [the claimant's] medical source." 20 C.F.R. § 404.1512(f). There is no information that was not readily available from Plaintiff's medical records. There was no need to arrange for a consultative examination because the ALJ had all the information he needed to reach a decision. The ALJ has discretion in deciding whether to order a consultative examination. See 20 C.F.R. § 404.1519a; Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003); Sims v. Apfel, 224 F. 3d 380, 381 (5th Cir. 2000). This case did not require the ALJ to exercise that discretion.[5]

---

[5] Any consultative examination would have occurred after Plaintiff's date last insured. See Knipple v. Comm'r of Soc. Sec., No. 6:08-cv40-Orl-18DAB, 2009 WL 51317, *4 (M.D. Fla. Jan. 7, 2009) ("there is no indication that a

12

Plaintiff also references the May 3, 2011 opinion from Teresa D. Parker, R.N., discussing her review of the medical evidence as support for his position that a consultative examination should have been ordered (Tr. 349). There is nothing in that opinion that speaks directly to the severity of Plaintiff's condition during the relevant time period. Ms. Parker did not examine Plaintiff, and reviewed only one report from the time period prior to his date last insured (Tr. 267-286, 343-348, 349).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #11) be **DENIED;** that Defendant's

---

consultative examination which would have had to occur significantly after the date last insured would be of any use at all, let alone be "necessary" to assist the ALJ.").

"Motion for Summary Judgment" (document #17) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: February 23, 2012

David S. Cayer
United States Magistrate Judge